IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| RICHARD M. SIMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 3:22-cv-745–HEH |
| ) | |
| CITY OF FREDERICKSBURG, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**
(Granting Defendants' Motions to Dismiss and
Motion for Sanctions)

This matter is before the Court on Defendants City of Fredericksburg; Yvonne J. Nageotte ("Nageotte"); and Nageotte, Nageotte, Nageotte, PC's ("Nageotte's law firm") (collectively, the "Defendants") Motions to Dismiss (the "Motions," ECF Nos. 33, 35), filed on April 5, 2023. On March 9, 2023, by Memorandum Opinion and Order (ECF Nos. 23, 24), this Court granted Defendants' previous Motions to Dismiss (ECF Nos. 8, 12) and dismissed Plaintiff Richard M. Simpson's ("Plaintiff") *pro se* Complaint (ECF No. 1). On March 23, 2023, Plaintiff filed his *pro se* Amended Complaint (ECF No. 28).[1] Defendants seek to dismiss all of Plaintiff's claims for either lack of jurisdiction or

---

[1] As the Court mentioned in its previous Memorandum Opinion (ECF No. 23), although Plaintiff also filed his Amended Complaint *pro se*, according to the Washington State Bar Association, Plaintiff is an attorney in the state of Washington. At this time, Plaintiff's license to practice law is under an interim suspension pending the outcome of disciplinary or disability proceedings. Washington State Bar Association Legal Directory, *Legal Profile for Richard M. Simpson*, https://www.mywsba.org/PersonifyEbusiness/LegalDirectory/LegalProfile.aspx?Usr_ID=000000 053162 (last visited June 21, 2023). However, when Plaintiff filed the Amended Complaint, he was still a licensed and practicing attorney in Washington state. Accordingly, Plaintiff "is not entitled to the liberal construction of pleadings ordinarily afforded to *pro se* litigants." *Gordon v.*

failure to state a claim. The parties have submitted memoranda supporting their respective positions. The Court will dispense with oral argument because the facts and legal contentions have been adequately presented to the Court, and oral argument would not aid in the decisional process. *See* E.D. Va. Loc. Civ. Rule 7(J).

Additionally, Defendants also filed Motions for Sanctions (ECF Nos. 46, 50) on May 12, 2023.[2] In those Motions for Sanctions, Defendants attached dozens of Plaintiff's threatening, vexatious, and harassing email communications that were sent to opposing counsel and others throughout the course of this litigation. Defendants move this Court to sanction Plaintiff's conduct based on these disturbing emails and the frivolous filing of Plaintiff's Amended Complaint. (ECF No. 46 at 1.)

In this Court's previous Memorandum Order (ECF No. 24), the Court warned Plaintiff that it would entertain motions for attorneys' fees should the Court deem any filed amended complaint frivolous. After reviewing the Amended Complaint and Plaintiff's communications with Defendants, the Court finds that Plaintiff's harassing conduct is reprehensible, clearly sanctionable, and not the proper conduct of anyone, let alone a licensed attorney. Moreover, the Court concludes that Plaintiff's Amended Complaint was filed frivolously to harass Defendants and collaterally attack Plaintiff's

---

*Gutierrez*, No. 1:06cv861, 2006 WL 3760134, at *1 n.1 (E.D. Va. Dec. 14, 2006). Several federal circuit courts have also drawn a distinction between *pro se* attorneys and other *pro se* parties. *See Rashad v. Jenkins*, No. 3:15cv655, 2016 WL 901279, at *3 (E.D. Va. Mar. 3, 2016) (collecting federal circuit court cases).

[2] Defendants also previously filed a Joint Motion for Sanctions (ECF No. 21) on February 27, 2023. However, because the basis of the later pending Motions for Sanctions is largely the same, the Court will only address the Motions filed on May 12, 2023 (ECF Nos. 46, 50).

2

state-court custody and divorce proceedings. For the following reasons, Defendants' Motions to Dismiss will be granted as to all claims, Defendants' Motions for Sanctions will be granted, and Defendants will be awarded reasonable costs and attorneys' fees.

## I. BACKGROUND

The allegations of this case stem from state-court custody and divorce proceedings occurring in the Fredericksburg Juvenile and Domestic Relations Court ("FJDRC") between Plaintiff and his wife. (Am. Compl. at 2.) Construing the allegations in the light most favorable to the Plaintiff, the following facts make up the background of this case.

On May 8, 2022, City of Fredericksburg Police allegedly served Plaintiff with a three-day emergency protective order at his "residence while he was home alone and where he had been all day [] since the night before." (*Id.* ¶ 3.1.) Plaintiff claims he then explained the circumstances to the two officers, and City of Fredericksburg Police allegedly pressed no criminal charges. (*Id.*) That same day, Plaintiff flew from Washington, D.C., to Seattle, Washington, and stayed in "Washington State for approximately one week." (*Id.* ¶ 3.2.)

After the three-day emergency order expired, Plaintiff allegedly received a phone call from "City of Fredericksburg Police or Stafford Sheriff's Department stating that the police sought to serve [Plaintiff] with a one-year renewal of the 3-day emergency protective order, despite [Plaintiff] being physically over three thousand miles away . . . ." (*Id.* ¶ 3.3.) Later that week, "a Sheriff attempted service on [Plaintiff] at [his] place of employment, which was at the time over six hundred miles from [the] City of Fredericksburg [sic]." (*Id.* ¶ 3.4.) Allegedly "[c]onfused and unable to reach his wife,

3

[Plaintiff] abandoned his work and returned mid-week to his house in [the] City of Fredericksburg [sic] (for which he had never been a permanent legal resident, having resided there no more than six months)." (*Id.* ¶ 3.4.)

On or about May 17, 2022, while in Fredericksburg, Plaintiff "inquired with the [FJDRC] concerning his wife's filings. At that time, the Clerk of that court informed Plaintiff of Nageotte's and her law firm's legal representation of his wife." (*Id.* ¶ 3.6.) Plaintiff then allegedly "printed off a stack of documents that offered to explain the unusual circumstances surrounding the situation and delivered those documents to [Nageotte's law firm] in hopes to alleviate the conflict." (*Id.* ¶ 3.7.) Nageotte's process server then served Plaintiff with a "custody and visitation packet of documents that she had filed with [FJDRC], despite [Plaintiff] and his wife being legally married and sharing their biological child together." (*Id.*)

On or about May 18, 2022, Plaintiff claims he sent a text message to his wife asking to see his daughter. (*Id.* ¶ 3.8.) The following day, "Stafford County Sheriff's Office arrested [Plaintiff] at gunpoint in his residence on a warrant for arrest, stating that [Plaintiff] had sent a text message to his legal wife asking to see his daughter." (*Id.* ¶ 3.9.) Plaintiff alleges he posed "absolutely no physical threat" and the "City of Fredericksburg sent [Plaintiff] to the Rappahannock Regional Jail and imprisoned him without due process." (*Id.*) The following week, the FJDRC allegedly "denied bail to [Plaintiff] for sending a text message to his legal wife in which he asked to see their daughter." (*Id.* ¶ 3.10.)

4

During his incarceration, Plaintiff claims that Nageotte informed Plaintiff's defense counsel that if "[Plaintiff] contacted [Nageotte's law firm] in any way, he would be in violation of his wife's and their 'client's' protective order." (*Id.* ¶ 3.11.) Plaintiff also alleges that "while attempting to negotiate [a plea deal] with the Commonwealth prosecuting attorney" for the City of Fredericksburg, Plaintiff's defense counsel informed him that "Nageotte prevented any plea deal from occurring to ensure Plaintiff's illegal captivity." (*Id.* ¶ 3.12.)

On or about May 24, 2022, Plaintiff claims he appeared in "[s]tate-administered shackles before the [FJDRC]" in a civil matter involving the custody of his child, and he alleges that Nageotte "asked the Court to force [Plaintiff] to undergo a full psychological evaluation." (*Id.* ¶ 3.13.) "Judge Vance of that Court ordered that [Plaintiff], a well-educated 38-year old married man with [a] child and no history of mental illness, be appointed a guardian *ad litem* at this hearing, due directly to Nageotte's suggestion." (*Id.*)

After "nearly a month in jail," Plaintiff alleges that he incurred a financial debt upon his release, which is an "indication of privatization and of racketeering, both involving the incarcerations of harmless citizens, all of whom presumably incur a forced, undesired monetary debt." (*Id.* ¶ 3.14.)

Plaintiff claims that he then hired a "Fredericksburg law firm and the lead attorney folded under pressure and entered into an agreement contrary to public policy and law, as proposed by [Nageotte]" and her law firm. (*Id.* ¶ 3.15.) Nageotte and her law firm then "deliberately sought an initial one-year renewal of a protective order to force the one-year

5

divorce requirement under Virginia law. . . ." (*Id.* ¶ 3.16.) Plaintiff alleges that Nageotte "violated the Rules of Professional Conduct when she took a case where payment is contingent upon a divorce, not to mention when she abuses her authority and imprisons people for profit." (*Id.* ¶ 3.17.) Plaintiff also claims that Nageotte asked him for $12,000 in legal fees to be paid to her, "despite [Plaintiff] never hiring her, her filing an unlawful filing in court, her attending a maximum of two short hearings, and her being responsible for removing his parental rights, illegally incarcerating [Plaintiff] under color of authority of law, and upending and destroying his otherwise peaceful life." (*Id.* ¶ 3.18.)

Despite numerous requests, Plaintiff asserts he "has seen his only child in a paid supervised facility fewer than twenty [20] hours in the past calendar year, due directly to [Nageotte and her law firm]." (*Id.* ¶ 3.19.) Plaintiff claims Nageotte has "refused negotiations and communications with a *pro se* litigant" and has allegedly "counseled her 'client' contrary to law, and has actively prevented healthy communication between spouses to ensure that a divorce occurs, an occurrence in which neither party apparently desires." (*Id.* ¶ 3.20.) Plaintiff alleges that Nageotte and her law firm "receive kick backs and share fees with non-lawyers, including licensed medical practitioners, namely one particular psychiatrist, against the law and against the Rules of Professional Conduct." (*Id.* ¶ 3.24.) He also asserts that the "Nageotte family receives income from the illegal incarceration of innocent individuals through Rappahannock Regional Jail operations." (*Id.* ¶ 3.22.)

## II. LEGAL STANDARD

A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). However, a court "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

A court may consider a document not attached to the complaint, when "the document [is] integral to the complaint and there is no dispute about the document's authenticity." *Id.* at 166. "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached, . . . the exhibit prevails." *Id.* (alteration in original) (quoting *Fayetteville Invs. v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). A court may also "consider public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint so long as the authenticity of these

7

documents is not disputed." *Witthohn v. Fed. Ins. Co.*, 164 F. App'x 395, 396 (4th Cir. 2006); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). In considering a motion to dismiss, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

### III.   DISCUSSION

#### A. Defendants' Motions to Dismiss.

Plaintiff's Amended Complaint states eighteen (18) causes of action. (Am. Compl. at 4–9.) As Defendants correctly point out, Counts III (malicious harassment), V (falsifying official documents), IX (destruction of parent-child relationship),[3] X (loss of companionship), XII (negligent interference with business investments), XVII (egregious government conduct), and XVIII (invasion of privacy) are not cognizable claims under Virginia or federal law under these circumstances. Accordingly, the Court will not address those claims and will dismiss them with prejudice. Defendants assert that the remaining claims in Plaintiff's Amended Complaint lack any factual or legal merit and should also be dismissed with prejudice. (Defs.' Mem. in Supp. at 1, ECF No. 34.)

---

[3] To the extent that Plaintiff argues a destruction of parent-child relationship under 42 U.S.C. § 1983 and the due process clause of the United States Constitution, the Supreme Court has made clear that federal courts are without jurisdiction to hear "insubstantial" or "obviously frivolous" constitutional claims. *Hagans v. Lavine*, 415 U.S. 528, 536 (1974); *see also Davis v. Pak*, 856 F.2d 648, 651 (4th Cir. 1988). The doctrine of substantiality is especially important where "a wholly frivolous federal claim serves as a pretext to allow a state law issue, the real focus of the claim, to be litigated in the federal system." *Pak*, 856 F.2d at 651. The Court finds that Plaintiff's constitutional claim on this basis is wholly without merit and is a pretextual federal issue solely used for the purpose of having a state law issue adjudicated in federal court.

8

Plaintiff responded by asserting that he has stated valid claims for violations of "Plaintiff['s] United States Constitutional Rights, Federal and Virginia statutory laws," and that this Court should intervene to halt future violations. (Pl.'s Resp. at 2, ECF No. 39.) The Court finds no merit whatsoever to Plaintiff's claims and will address each one in turn.

### i. Count I – False Imprisonment

Under Count I, Plaintiff states "[t]he acts and omissions of the Defendants constitute the tort and crime of false imprisonment for which the Defendants are liable when Defendants willfully detained [Plaintiff], without his consent, and [Nageotte] acted under color of authority of law as a private practice attorney and non-governmental employee." (Am. Compl. ¶¶ 5.1–5.2.)

Under Virginia law, "[f]alse imprisonment is the restraint of one's liberty without any sufficient legal excuse." *Lewis v. Kei*, 708 S.E.2d 884, 890 (Va. 2011) (citing *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388 (Va. 1948)). "If the plaintiff's arrest was lawful, the plaintiff cannot prevail on a claim of false imprisonment." *Id.* (citing *DeChene v. Smallwood*, 311 S.E.2d 749, 752 (Va. 1984)). The Virginia Supreme Court has held that "if a warrant is 'regular and valid,' then 'no action for false imprisonment could have been maintained if the prisoner had been taken in due course to the magistrate and there admitted to bail or imprisoned regularly upon due order of commitment from him." *Id.* at 891 (quoting *Sands & Co. v. Norvell*, 101 S.E. 569, 574 (Va. 1919)).

9

Plaintiff claims that he was arrested on a warrant by "Stafford County Sheriff's Office" for sending a "text message to his legal wife asking to see his daughter[, d]espite posing absolutely no physical threat. . . ." (Am. Compl. ¶ 3.9.) However, Plaintiff once again supplies no factual support that challenges the sufficiency or legitimacy of the arrest warrant. Simply stating in conclusory fashion that Plaintiff was arrested, even though he posed no physical threat, does not adequately plead that the arrest was unlawful false imprisonment. In fact, the evidence shows that there was a valid protective order in place against Plaintiff, he was found in violation of that order, arrested, and held without bond by the state magistrate judge. (Police Investigative Report at 5, ECF No. 36-4.) Plaintiff provided no new factual support in his Amended Complaint to refute the basis of his arrest. Therefore, because the Stafford County Sheriff's Office had lawful authority to arrest Plaintiff, his false imprisonment claim against the City of Fredericksburg cannot stand and will be dismissed with prejudice.

Moreover, it is abundantly clear that it was Plaintiff's wife who sought the protective order, not Nageotte. (Reporting Officer Narrative at 3, ECF No. 36-3 (stating "[o]n this date, Suzannah Glaeser, went to the magistrate and obtained a warrant for violation of a protective order."); *see also* Warrant of Arrest at 8–10; ECF No. 36-11.) His wife's name clearly appears as "Petitioner" on the protective order. (*See* Protective Order at 3, ECF No. 36-2.) Thus, Plaintiff has not adequately pled that Nageotte or her law firm played any unlawful role in restraining his freedom and his claim of false imprisonment against Nageotte and her law firm will be dismissed with prejudice.

### ii. Count II - Malicious Prosecution

To prevail in an action for malicious prosecution, a plaintiff must prove that the prosecution was "'(1) malicious; (2) instituted by or with the cooperation of the defendants; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff.'" *Dill v. Kroger Ltd. P'ship I*, 860 S.E.2d 372, 378 (Va. 2021) (quoting *Kei*, 708 S.E.2d at 889)). "Actions for malicious prosecution arising from criminal proceedings are not favored in Virginia and the requirements for maintaining such actions are more stringent than those applied to other tort cases to ensure that criminal prosecutions are brought in appropriate cases without fear of reprisal by civil actions." *Kei*, 708 S.E.2d at 889.

Plaintiff cannot establish that the prosecution was without probable cause or that the proceedings were terminated in a manner not unfavorable to Plaintiff. First, as mentioned previously, a magistrate judge determined that probable cause was present to issue the one-year protective order. (*See* Protective Order at 14–15; ECF No. 36-11.) Second, Plaintiff was found in violation of the protective order, arrested, and detained for that violation. Because Plaintiff provided no proof that the criminal proceedings were ultimately terminated in his favor, he cannot satisfy the fourth element of a malicious prosecution claim. Therefore, Count II against Defendants will be dismissed with prejudice.

### iii. Count IV - Fraud

For a plaintiff to maintain a cause of action for actual fraud, the plaintiff must allege with particularity "(1) a false representation, (2) of a material fact, (3) made

11

intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the party misled." *Richmond Metro. Auth. v. McDevitt Str. Bovis, Inc.*, 507 S.E.2d 344, 346 (Va. 1998). Plaintiff baldly alleges that "Nageotte *et al* [sic] made false statements concerning [Plaintiff] *et al* [sic] with intent to deceive, and [Plaintiff] *et al* [sic] relied on those statements to their detriment and injury." (Am. Compl. ¶ 8.2.) This allegation is nothing more than "threadbare recitals of a cause of action's elements" and is not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 663. Therefore, this claim against Defendants will be dismissed with prejudice.

### iv. Count VI - Negligence

It is well-established that "[t]he elements of an action in negligence are a legal duty on the part of the defendant, breach of that duty, such breach was the proximate cause of injury, resulting in damage to the plaintiff." *Blue Ridge Serv. Corp. of Va. v. Saxon Shoes, Inc.*, 624 S.E.2d 55, 62 (Va. 2006). Plaintiff once again does nothing more than recite the elements of a negligence claim by stating that the actions of the "Defendants constitute the tort of negligence . . . when all three Defendants have a duty to the public, as public servants or as private actors with legal duties, and breached those duties, which were the actual and proximate cause of Plaintiffs' injuries." (Am. Compl. ¶ 10.2.) This is nothing more than a conclusory statement and does not meet federal pleading standards. Accordingly, Count VI will be dismissed with prejudice as to all Defendants.

12

### v. Count VII - Negligent Infliction of Emotional Distress ("NIED")

The Virginia Supreme Court has clearly held that "where conduct is merely negligent, not willful, wanton, or vindictive, and physical impact is lacking, there can be no recovery for emotional disturbance alone." *Delk v. Columbia/HCA Healthcare Corp.*, 523 S.E.2d 826, 833 (Va. 2000) (quoting *Hughes v. Moore*, 197 S.E.2d 214, 219 (Va. 1973)). Thus, "'there may be recovery in such a case if, but only if, there is a clear and unbroken chain of causal connection between the negligent act, the emotional disturbance, and the *physical injury*.'" *Id.* at 834 (quoting *Hughes*, 197 S.E.2d at 219) (emphasis added).

Here, Plaintiff has done nothing more than make conclusory allegations and thus, has not stated a claim. Notwithstanding, Plaintiff also fails to state a claim because he alleges no physical injury whatsoever. Therefore, Count VII will be dismissed with prejudice.

### vi. Count VIII - Intentional Infliction of Emotion Distress ("IIED")

To recover on a claim of IIED, a plaintiff must show that "(1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a casual connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe." *Supervalu, Inc. v. Johnson*, 666 S.E.2d 335, 370 (Va. 2008) (citing *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007)).

13

Once again, Plaintiff's Amended Complaint simply recites the elements of an IIED claim and does not sufficiently state a cause of action. Count VIII will be dismissed with prejudice.

### vii. Count XI - Intentional Interference with Business Relations

To state a claim for intentional interference with business relations, the plaintiff must show (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferer; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 321 (Va. 2014). If the claim involves business expectancy, "a plaintiff . . . must allege and prove not only an intentional interference . . . , but also that the defendant employed 'improper methods.'" *Dunn, McCormack, & MacPherson v. Connolly*, 708 S.E.2d 867, 870 (Va. 2011).

Plaintiff asserts that Nageotte and her law firm are liable because he "forfeited $15,000 and other expenditures in real estate contracts, for which [Nageotte] had knowledge of and intentionally and improperly interfered with and acted." (Am. Compl. ¶ 15.2.) First, Plaintiff's allegation is no more than a conclusory statement that lacks an factual supplementation. The Amended Complaint provides no factual supplementation for what these real estate contracts were or Nageotte's knowledge of them. Second, there is no allegation that improper methods were employed as required under Virginia law for a business expectancy claim. Therefore, Count XI will be dismissed with prejudice.

14

### viii. Count XIII - Violation of 42 U.S.C. § 1983

The Supreme Court has held that "to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Blessing v. Freestone*, 520 U.S. 329, 343 (1997) (emphasis in original). This Court has previously explained that "[s]ection 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Bland v. Va. State Univ.*, No. 3:06CV513-HEH, 2007 WL 1991041, at *2 (E.D. Va. July 5, 2007) (internal quotations omitted). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Id.* (citing *Albright v. Oliver*, 510 U.S. 266, 271 (1994)).

Under Count XIII, Plaintiff does not identify or assert any violation of a federal right. Instead, he simply asserts a violation of 42 U.S.C. § 1983, which does not confer any substantive rights. (Am. Compl. ¶ 17.2.) Therefore, Plaintiff asserts no cognizable claim under Count XIII, and the claim will be dismissed with prejudice.

### ix. Counts XIV–XVI - Plaintiff's Constitutional Claims

The Court construes Plaintiff's remaining constitutional claims as claims brought under 42 U.S.C. § 1983. Section 1983 claims require proof that the defendant was acting under color or authority of state law and "subject[ed], or cause[d] [the plaintiff] to be subjected" to the deprivation of constitutional or federal rights. 42 U.S.C. § 1983. Personal-capacity suits "seek to impose individual liability upon a *government* officer for actions taken under color of state law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (emphasis added). Plaintiff must allege facts sufficient to support an inference that Defendants were

15

engaged in state action. *See Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001) (holding that assessing whether a private entity's conduct constituted state action is a "necessarily fact-bound inquiry"). State action necessarily requires both an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by "a person for whom the State is responsible and . . . the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999).

As a threshold matter, Nageotte and her law firm are not government officials in any capacity, nor is the state responsible for their conduct for purposes of a § 1983 claim. For this reason alone, Plaintiff states no cognizable constitutional claim against Nageotte and her law firm. Notwithstanding, Plaintiff once again merely states nothing more than conclusory allegations devoid of any factual supplementation. (*See* Am. Compl. ¶¶ 18.1–20.2.) Thus, he does not state a valid claim.

In order for Plaintiff to maintain a § 1983 claim against the City of Fredericksburg, he must show that "the municipality *itself* caused the constitutional violation at issue. *Respondeat Superior* or vicarious liability will not attach under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (emphasis in original) (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978)). "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983." *Id.* (quoting *Springfield v. Kibbe*, 480 U.S. 257, 267 (1987)).

16

Here, Plaintiff has alleged no policy or custom at all. He merely states that "the acts or omissions of the Defendants" establish constitutional violations. (Am. Compl. ¶¶ 18.2, 19.2, 20.2.) This is simply not enough to state a cognizable claim against the City of Fredericksburg.

Therefore, due to the Plaintiff's deficiencies in pleading his constitutional claims, he has not stated any cognizable claims. Accordingly, Counts XIV, XV, and XVI will be dismissed with prejudice.

In sum, Plaintiff's Amended Complaint is merely a laundry list of threadbare recitals of causes of actions and does not satisfy the required pleading standards. The Court warned Plaintiff that if he filed an Amended Complaint that did not satisfy the pleading standards of federal courts, his Amended Complaint could be dismissed with prejudice. It is apparent to this Court that Plaintiff's Amended Complaint is nothing more than an attempt to either collaterally attack Plaintiff's state court proceedings in the FJDRC or designed to harass Defendants for their incidental role in those proceedings. Accordingly, the Court finds that all of Plaintiff's claims are either not recognizable claims or are wholly without merit. The Court will therefore grant Defendants' Motions to Dismiss, and Plaintiff's Amended Complaint will be dismissed with prejudice.

### B. Defendants' Motions for Sanctions

As previously mentioned, Defendants move this Court to impose sanctions based on Plaintiff's "pending frivolous Amended Complaint and for his conduct in the sending of hundreds of harassing, defamatory, and threatening emails. . . ." (Def.'s Mot. for Sanctions at 1, ECF No. 46.) Based on the multitude and severity of Plaintiff's disturbing

17

communications provided by Defendants and the frivolous nature of Plaintiff's Amended Complaint, the Court will grant Defendants' Motions for Sanctions and award Defendants reasonable attorneys' fees.

Rule 11 provides in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

Fed. R. Civ. P. 11(b).

Decisions regarding the imposition of Rule 11 sanctions are left to the Court's discretion. *See Edmond v. Consumer Prot. Div.*, 934 F.2d 1304, 1313 (4th Cir. 1991). The function of Rule 11 is to protect courts and litigants against the cost and harassment of "having to process frivolous and repetitive papers." *Pavilonis v. King*, 626 F.2d 1075, 1078 (1st Cir. 1980). In the Fourth Circuit, the test regarding such sanctions is one of objective reasonableness: "whether a reasonable attorney in like circumstances would believe his actions to be factually and legally justified." *Edmond*, 934 F.2d at 1313. If the Court determines that a party has failed to meet the requirements of Rule 11(b), it may impose sanctions "after notice and reasonable opportunity to respond." Fed. R. Civ. P. 11(c). A sanction imposed for violation of Rule 11 is "limited to what is sufficient to

18

deter repetition of such conduct or comparable conduct by others similarly situated" and may be imposed upon the attorney that has committed the violation. *Id.* If warranted, the Court may award the prevailing party the "reasonable expenses and attorneys' fees incurred in presenting or opposing the motion." *Id.*

The case at hand is unique because although Plaintiff is a *pro se* litigant, Plaintiff was a licensed attorney in the state of Washington at the time this action was filed. (*See supra* footnote 1.) However, this does not excuse Plaintiff's disgraceful communications with Defendants and their counsel in this case. It also does not excuse the frivolous Amended Complaint and ten other frivolous motions filed by Plaintiff. (*See* ECF Nos. 25, 26, 27, 29, 30, 31, 42, 43, 52, 53.) Pursuant to Federal Rule of Civil Procedure 11(c), Defendants provided Plaintiff with notice of their intent to seek sanctions and allowed Plaintiff the required twenty-one days to either respond to Defendants' Motions or allow Plaintiff to withdraw or correct the frivolous filing. (Notice of Mot. for Sanctions at 1, ECF No. 47-1.) After receiving notice, Plaintiff took no action.

As a part of their Motions for Sanctions, Defendants also attached dozens of email messages which were drafted and sent from Plaintiff's email account to Defendants, their counsel, and others. (*See* ECF No. 47-2 at 1–57; *see also* ECF No. 22.) These communications range of degrading harassment, derogatory and profane language, and clearly violent and dangerous threats. The number of harassing messages is staggering. This type of conduct is completely reprehensible for anyone but especially for someone who is a trained and practicing attorney. Based on Plaintiff's extensive email

19

communications, the Court finds that his harassing and inexcusable conduct alone warrants sanctions in this case.

Furthermore, after assessing Plaintiff's Amended Complaint and his ten additional motions, this Court also concludes that these filings were wholly without merit and were simply intended to harass Defendants or increase the costs and burdens of litigation. As mentioned previously, the function of Rule 11 is to protect courts and litigants against the cost and harassment of "having to process frivolous and repetitive papers." *King*, 626 F.2d at 1078. Despite being a trained and practicing attorney, Plaintiff repeatedly burdened this Court's already busy docket and needlessly wasted both the Court's and defense counsel's valuable time.

Thus, for the foregoing reasons, the Court will grant Defendants' Motions for Sanctions and award Defendants the reasonable costs and attorneys' fees of opposing Plaintiff's frivolous Amended Complaint and all motions filed after March 23, 2023.

## IV. CONCLUSION

For the aforementioned reasons, the Court will grant Defendants' Motions to Dismiss (ECF Nos. 33, 35) and Defendants' Motions for Sanctions (ECF Nos. 46, 50). An appropriate Order will accompany this Memorandum Opinion.

Date: June 27, 2023  
Richmond, Virginia

/s/  
Henry E. Hudson  
Senior United States District Judge